**An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

GARY SHANER,
Appellant,
vs.
PILAR D. SHANER,
Respondent.

No. 62498

**FILED**

JUL 3 1 2015


TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from an order denying a motion to relocate and modifying visitation. Eighth Judicial District Court, Clark County; Gayle Nathan, Judge.

Appellant Gary Shaner ("Gary"), who has continuously had primary physical custody of the parties' two minor children, filed a "Motion for Permission to Relocate; and Related Matters," in which he requested permission to relocate with the children from Las Vegas, Nevada to Reno, Nevada. In the motion, he alleged that the move would be beneficial because: (1) he had been accepted into the engineering college at the University of Nevada, Reno (UNR); (2) the minor children would be reunited with their older siblings, who were attending UNR; (3) the schools in northern Nevada outperform the schools in Clark County; and (4) northern Nevada has better weather and more outdoor activities. Respondent Pilar Shaner ("Pilar") opposed the motion, arguing that relocation was not in the best interests of the children and that a move to Reno would disrupt her weekly visitation and relationship with the children. Pilar also argued for a change of custody.

After expressing confusion as to the legal standard that applied to Gary's motion, the district court focused on the best interests of the children and practical observations about the parties. For example, the district court reasoned that "the law says that the [children] should

15-23158

have frequent associations with both parents," and that "it would be almost impossible for the kids to see Mom every weekend if they were up in Reno." Ultimately, after three hearings, the district court denied Gary's motion because "it ha[d] serious doubts as to whether there would ever be sufficient money between these two parents . . . to ever have any kind of effective schedule where Mom could see the children on any kind of regular basis." In reaching its decision, the court rejected Gary's "request to modify Plaintiff's timeshare," reasoning: "I'm not allowing substituted visitation. . . . Because I'm not. I don't think it's in the children's best interest, that's why." The district court also denied the request to modify custody that Pilar included in her opposition to Gary's motion, but moments later stated that it was modifying custody by granting Pilar an additional evening of visitation. This appeal followed. Generally, "[t]his court reviews the district court's decisions regarding custody, including visitation schedules, for an abuse of discretion." *Rivero v. Rivero*, 125 Nev. 410, 428, 216 P.3d 213, 226 (2009). However, purely legal issues, including whether the appropriate legal standard was applied, are reviewed de novo. *See Rennels v. Rennels*, 127 Nev., Adv. Op. 49, 257 P.3d 396, 399 (2011). We reverse and remand for further proceedings consistent with the legal standards articulated in this order.

This appeal originally presented what both parties correctly saw as an open and unsettled question of Nevada law: whether a parent with primary physical custody must obtain consent from the noncustodial parent or the district court before moving himself and his children a long distance within Nevada. While this case was pending, however, the Nevada Legislature passed, and the Governor signed, Assembly Bill 263, which amends Nevada's relocation statute, NRS 125C.200, as follows:

> 1. If primary physical custody has been established pursuant to an order, judgment or

SUPREME COURT
OF
NEVADA

(O) 1947A

decree of a court and the custodial parent intends to relocate his or her residence to a place outside of this State *or to a place within this State that is at such a distance that would substantially impair the ability of the other parent to maintain a meaningful relationship with the child,* and the custodial parent desires to take the child with him or her, the custodial parent shall, before relocation:

> (a) Attempt to obtain the written consent of the noncustodial parent to relocate with the child; and

> (b) If the noncustodial parent refuses to give that consent, petition the court for permission to relocate with the child.

A.B. 263, 78th Leg. § 16 (Nev. 2015) (emphasis added). A.B. 263 becomes effective on October 1, 2015.[1] *See* Nevada Electronic Legislative Information System, *AB 263 Overview,* https://www.leg.state.nv.us/App/NELIS/REL/78th2015/Bill/1726/Overview (last visited July 9, 2015).

Section 14 of A.B. 263 also articulates the procedure that applies "[i]n every instance of a petition for permission to relocate with a child that is filed pursuant to NRS 125C.200." A.B. 263, 78th Leg. § 14 (Nev. 2015). First, the relocating parent must demonstrate that:

> (a) There exists a sensible, good-faith reason for the move, and the move is not intended to deprive the non-relocating parent of his or her parenting time; (b) The best interests of the child are served by allowing the relocating parent to relocate with the child; and (c) The child and the relocating

---

[1]Although the amendment is not yet effective, it will fill a gap in existing statutory law when it takes effect. Rather than create law that will be superseded statutorily in a matter of months, we accept the standards as articulated in A.B. 263 as clarifying or, at minimum, persuasive as to the standards to be applied in this setting.

parent will benefit from an actual advantage as a result of the relocation.

*Id.* If the relocating parent satisfies the threshold inquiry, then the court must weigh the following six factors and the impact of the factors on the child and both parents:

> (a) The extent to which the relocation is likely to improve the quality of life for the child and the relocating parent;

> (b) Whether the motives of the relocating parent are honorable and not designed to frustrate or defeat any visitation rights accorded to the non-relocating parent;

> (c) Whether the relocating parent will comply with any substitute visitation orders issued by the court if permission to relocate is granted;

> (d) Whether the motives of the non-relocating parent are honorable in resisting the petition for permission to relocate or to what extent any opposition to the petition for permission to relocate is intended to secure a financial advantage in the form of ongoing support obligations or otherwise;

> (e) Whether there will be a realistic opportunity for the non-relocating parent to maintain a visitation schedule that will adequately foster and preserve the parental relationship between the child and the non-relocating parent if permission to relocate is granted; and

> (f) Any other factor necessary to assist the court in determining whether to grant permission to relocate.

*Id.*

Although "[c]ourts presume that a custody statute or amendment operates prospectively absent any declaration that it is to operate retroactively," 3A Norman J. Singer & Shambie Singer, *Sutherland Statutory Construction* § 69:8 (7th ed. Supp. 2014), the

SUPREME COURT
OF
NEVADA

(O) 1947A

4

"general rule does not apply to statutes that do not change substantive rights and instead relate solely to remedies and procedure." *Valdez v. Employers Ins. Co. of Nev.*, 123 Nev. 170, 179-80, 162 P.3d 148, 154 (2007). Here, Section 14 essentially mirrors the interstate relocation guidelines that this court first established in *Schwartz v. Schwartz*, 107 Nev. 378, 812 P.2d 1268 (1991), and has consistently followed, most recently in *Druckman v. Ruscitti*, 130 Nev., Adv. Op. 50, 327 P.3d 511, 515 (2014). Although A.B. 263 is new in that it extends the interstate relocation standard to certain intrastate relocation cases, it does not make sense not to accept its standards as applicable to parents who wish to relocate intrastate, a subject previously left to judicial development. Thus, we consider whether the district court reached its conclusions for the appropriate reason(s) in light of the standards set forth in NRS 125C.200, as amended.

"Specific findings and an adequate explanation of the reasons for the custody [or visitation] determination 'are crucial to enforce or modify a custody order and for appellate review.'" *Davis v. Ewalefo*, 131 Nev., Adv. Op. 45, ___ P.3d ___, ___ (2015) (quoting *Rivero*, 125 Nev. at 430, 216 P.3d at 227). Here, the district court denied Gary's motion for reasons that are not entirely clear to this court, and granted Pilar's request for a change of custody despite its oral statement that "her exhibits do not provide [t]he [c]ourt with sufficient evidence to modify custody. So that request is denied." And while the district court signed an order that Gary prepared, the order did not include any factual findings or conclusions of law. *See Id.*, 131 Nev., Adv. Op. 45, ___ P.3d. at ___ (reversing and remanding a child custody determination where the district court's failure to include findings to support its conclusion left the court in doubt as to whether 'the district court's determination was made for

SUPREME COURT
OF
NEVADA

(O) 1947A

5

appropriate reasons.'" (quoting *Rico v. Rodriguez*, 121 Nev. 695, 701, 120 P.3d 812, 816 (2005)).

More importantly, the district court based its denial of Gary's request to move on "a shift away from weekly contact [with Pilar]," *Halbrook v. Halbrook*, 114 Nev. 1455, 1459, 971 P.2d 1262, 1265 (1998), requiring Gary to show that "it's in the best interest of the children that [Pilar] have less time with her kids or that her custodial time be changed." The record shows, however, that Gary has continuously provided for the children's daily needs since 2007, and as the parent with primary physical custody, Gary has "the primary responsibility for maintaining a home for the child[ren]." *Rivero*, 125 Nev. at 428, 216 P.3d at 226. There is no evidence that Gary's purpose in relocating to Reno is to deprive Pilar of her parenting time, as the district court repeatedly acknowledged that Gary supports the relationship between the children and Pilar, and the primary purposes of the move—obtaining higher education and reuniting the minor children with their older sisters—benefit both Gary's and the children's interests. *See McGuinness v. McGuinness*, 114 Nev. 1431, 1436, 970 P.2d 1074, 1078 (1998) (observing that a child's best interest does not exist in a vacuum and "the well-being of a parent, which could be heightened by relocation, may have a substantial effect on the best interest of the child"); *Druckman*, 130 Nev., Adv. Op. 50, 327 P.3d at 516 (recognizing that the bond between a child and her older sibling supports a parent's desire to relocate closer to the older sibling). And while long-distance relocation inevitably lessens the opportunities for daily or weekly physical contact, "[p]hysical separation does not preclude each parent from maintaining significant and substantial involvement in a child's life," *McGuinness*, 114 Nev. at 1436, 970 P.2d at 1077, especially where, as here, the parties regularly communicate via telephone or Skype. *See also*

SUPREME COURT
OF
NEVADA

(O) 1947A

6

*Trent v. Trent*, 111 Nev. 309, 316-17, 890 P.2d 1309, 1313-14 (1995) (reversing a district court order denying a parent's request to relocate where the district court "fail[ed] to consider whether reasonable, alternative visitation was possible").

Because the district court improperly weighed the fact that Pilar would no longer have weekly, in-person contact with the children, we reverse the order denying Gary's request to relocate and remand this matter to the district court for an evaluation of whether reasonable, alternative visitation is available. If necessary, the district court shall also consider whether Gary's relocation to Reno is a "substantial change in circumstances" that "warrant[s] a custody modification." *Ellis v. Carucci*, 123 Nev. 145, 150-51, 161 P.3d 239, 242-43 (2007).

It is so ORDERED.

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

cc:  Eighth Judicial District Court, Department T
     Doyle Law Office, PLLC
     Black & LoBello
     Eighth District Court Clerk